UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JESSICA BLANCO,                          NO. CIV. 2:09-578 WBS DAD

        Plaintiff,

    v.                                   MEMORANDUM AND ORDER RE:
                                         MOTION TO DISMISS
AMERICAN HOME MORTGAGE
SERVICING, INC., OPTION ONE
MORTGAGE CORPORATION, THE
FUNDING & LENDING NETWORK,
MANDALE JOHNSON, MYRON W.
BUTLER, AHMSI DEFAULT
SERVICES, T.D. SERVICE
COMPANY, and DOES 1 through
20, inclusive,

        Defendants.
_____/


----oo0oo----

        Plaintiff Jessica Blanco filed this action against

defendants American Home Mortgage Serving, Inc. ("AHMSI"), Option

One Mortgage Corporation ("Option One")[1], The Funding & Lending

Network ("FLN"), Mandale Johnson, Myron W. Butler, AHMSI Default

Services ("Default Services"), and T.D. Service Company ("TD"),

alleging various state and federal claims relating to a loan they

obtained to refinance their home in Woodland, California.  AHMSI,

Default Services and Option One move to dismiss plaintiff's First

Amended Complaint ("FAC") pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief

can be granted.[2]

I.    Factual and Procedural Background

---

[1]    Option One is now known at Sand Canyon Corporation.
For the purposes of consistency with the briefs, this memorandum
will refer to this entity as "Option One."

[2]    Plaintiff's attorney Johathan Stein seems to have a
problem complying with the rules of this court.  His opposition
to defendants' motion to dismiss was not filed until December 1,
2009.  According to Local Rule 230(c), opposition to the granting
of a motion must be filed and served not less than fourteen days
preceding the noticed hearing date.  As the hearing for this
matter was set for December 7, 2009, Mr. Stein filed his papers
ten days late.  Additionally, he did not effect service on
defendants' counsel, but instead sent his late opposition to
defendants' prior counsel of record, who has not been the
attorney of record for some time.  (Bauer Decl. ¶¶ 1-2.)  As a
result, defendants' counsel had an extremely small amount of time
to respond to plaintiff's opposition.

This is not the first time Mr. Stein has been called to
task in this court for failure to comply with the Local Rules.
See Beecham v. Homeq., No. Civ. 2:09-1375 WBS JFM, (E.D. Cal.
Oct. 9, 2009) (Stein sanctioned for failure to appear at a
scheduled hearing); Hernandez v. Am. Home Mortgage Servicing
Inc., No. Civ. 2:09-01418 GEB EFB,(E.D. Cal. Oct. 8, 2009)
(sanctioned for failure to file a status report despite repeated
requests); Blanco v. Am. Home Mortgage Servicing, Inc., No. Civ.
2:09-578 WBS DAD, (E.D. Cal. Oct. 2, 2009) (sanctioned for
failure to comply with pretrial scheduling order despite repeated
requests by the court).

Although the court will not impose sanctions under
Local Rule 110 for the present transgression, Mr. Stein can rest
assured it will be taken into account in the event this court is
called upon to sanction him in the future.

1          On June 22, 2006, plaintiff obtained a loan from Option
2    One to refinance her home, located at 406 Monte Vista Way in
3    Woodland, California.  (FAC ¶¶ 7, 29)  This loan was secured by a
4    Deed of Trust on the property. (FAC ¶ 29.)  Plaintiff claims that
5    she was channeled into this allegedly unaffordable loan through
6    the conduct of Johnson, who allegedly exaggerated plaintiff's
7    earnings to secure the loan.  (Id. ¶¶ 20-25.)  The Deed of Trust
8    listed Premier Trust Services, Inc. as trustee and Option as
9    lender. (Id. ¶ 29.)

10          Plaintiff eventually defaulted on her loan, and a
11    Notice of Default and Election to Sell Under Deed of Trust was
12    filed in Yolo County by T.D. Service Company on November 4, 2008,
13    which stated that Wells Fargo Bank, N.A. as trustee for Option
14    One had become the beneficiary of the loan. (Id. ¶ 40.)  On
15    December 3, 2008, an Assignment of Deed was allegedly recorded in
16    Yolo County which allegedly stated that AHMSI would transfer an
17    interest in plaintiff's mortgage to LaSalle Bank National
18    Association, as Trustee for Merrill Lynch.[3]  (Id. ¶ 41.)
19    Plaintiff allegedly was sent notice of a trustee sale by T.D. on
20    February 5, 2009.  (Id. ¶ 42.)  On February 25, 2009, plaintiff
21    allegedly sent a Qualified Written Request ("QWR") under the Real
22    Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§
23    2601-2617, to AHMSI that included a demand to rescind their loan
24    under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f.

25    ────────────────
26          [3]    The FAC is entirely unclear as to what interest was
      allegedly transferred by AHMSI.  The FAC confusingly alleges that
27    the Assignment of the Deed stated that AHMSI "as successor-in-
      interest to Option One grant, bargain, sell assign transfer,
28    convey, set over and deliver unto La Salle Bank National
      Association as Trustee for Merrill Lynch. . . ."  (FAC ¶ 41.)

1  (Id. ¶ 30.)

2        In her FAC, plaintiff asserts ten causes of action

3  against seven defendants.  AHMSI, Default Services, and Option

4  One's motion to dismiss challenges only the causes of action that

5  apply to MERS and Saxon.

6  II. Discussion

7        On a motion to dismiss, the court must accept the

8  allegations in the complaint as true and draw all reasonable

9  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

10  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

11  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

12  (1972).  To survive a motion to dismiss, a plaintiff needs to

13  plead "only enough facts to state a claim to relief that is

14  plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

15  544, 570 (2007).  This "plausibility standard," however, "asks

16  for more than a sheer possibility that a defendant has acted

17  unlawfully," and where a complaint pleads facts that are "merely

18  consistent with" a defendant's liability, it "stops short of the

19  line between possibility and plausibility."  Ashcroft v. Iqbal,

20  129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-

21  57).

22        In general a court may not consider items outside the

23  pleadings upon deciding a motion to dismiss, but may consider

24  items of which it can take judicial notice.  Barron v. Reich, 13

25  F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

26  notice of facts "not subject to reasonable dispute" because they

27  are either "(1) generally known within the territorial

28  jurisdiction of the trial court or (2) capable of accurate and

4

1  ready determination by resort to sources whose accuracy cannot

2  reasonably be questioned." Fed. R. Evid. 201.

3       AHMSI, Default Services, and Option One submitted a RJN

4  in support of their motion to dismiss which contains three

5  exhibits: (1) a copy of the Deed of Trust and accompanying riders

6  executed by plaintiff, recorded in Yolo County on June 30, 2006;

7  (2) a copy of the Notice of Default and Election to Sell Under

8  Deed of Trust, recorded in Yolo County on November 4, 2008; and

9  (3) a copy of the Notice of Trustee's Sale, recorded in Yolo

10  County on February 5, 2009.

11       The court will take judicial notice of defendants'

12  exhibits, as they are matters of public record whose accuracy

13  cannot be questioned. See Lee v. City of Los Angeles, 250 F.3d

14  668, 689 (9th Cir. 2001).

15  A.   TILA

16       Plaintiff alleges that Option One failed to comply with

17  TILA by "(a) failing to provide the required disclosures prior to

18  consummation of the transaction; (b) failing to make required

19  disclosures clearly and conspicuously in writing; (c) failing to

20  timely deliver to [p]laintiff notice required by TILA; (d)

21  placing terms prohibited by TILA into the transaction; and (e)

22  failing o disclose all finance charge details and the annual

23  percentage rate based upon properly calculated and disclosed

24  finance charges and amounts financed." (FAC ¶ 58.) Plaintiff

25  prays for both damages and rescission of her loan based on these

26  alleged TILA violations. (Id. ¶¶ 61-65.)

27  1.   Damages

28       The statute of limitations for a TILA damages claim is

one year from the date of the alleged TILA violation.   15 U.S.C.
§ 1640(e).   Moving defendants argue that plaintiff's claim for
damages under TILA is foreclosed by the statute of limitations
because it was filed more than one year after the alleged TILA
violations.   Here, plaintiff's TILA claim arises solely out of
failure to make required disclosures at the time the loan was
entered, which was on June 22, 2006.   The limitations period
began to run at that time, <u>King v. California</u>, 784 F.2d 910, 914
(9th Cir. 1986), and would normally have expired on June 22,
2007.   Plaintiff's initial complaint was not filed until February
27, 2009, more than a year and a half past the statute of
limitations.   Plaintiff's TILA claim is therefore time barred,
unless the doctrine of equitable estoppel applies.

        The Ninth Circuit has held that equitable tolling of
claims for damages under TILA may be appropriate "in certain
circumstances," and can operate to "suspend the limitations
period until the borrower discovers or had reasonable opportunity
to discover the fraud or non-disclosures that form the basis of
the TILA action." <u>Id.</u> at 914-15.   Because the applicability of
the equitable tolling doctrine often depends on matters outside
the pleadings, it "is not generally amenable to resolution on a
Rule 12(b)(6) motion." <u>Supermail Cargo, Inc. v. U.S.</u>, 68 F.3d
1204, 1206 (9th Cir. 1995).   However, when a plaintiff does not
allege any facts demonstrating that he or she could have not
discovered the alleged violations by exercising due diligence,
dismissal may be appropriate. <u>See</u> <u>Meyer v. Ameriquest Mortg.</u>
<u>Co.</u>, 342 F.3d 899, 902-03 (9th Cir. 2003) (dismissing equitable
tolling of TILA claim because plaintiff was in full possession of

all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations); <u>Hubbard v. Fidelity Federal Bank</u>, 91 F.3d 75, 79 (9th Cir. 1996) (finding that plaintiff was not entitled to equitable tolling because "nothing prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements").

Plaintiff alleges that equitable tolling is appropriate because she was not given a copy of any of the loan documents prior to closing, was not allowed to review the documents, and finally because "the facts surrounding loan transaction [sic] subject to this litigation were purposefully hidden and continue to be hidden from him [sic] to this day." (Pl.'s Opp'n Mot. Dismiss 10:21-25.) However, plaintiff does not offer any facts that demonstrate how Option One concealed the facts surrounding plaintiff's mortgage. Plaintiff also does not explain what prevented her from later reviewing the loan documents, which she admittedly was given at closing, and TILA's statutory requirements. "Such factual underpinnings are all the more important . . . since the vast majority of [p]laintiff's alleged violations under TILA are violations that are self-apparent at the consummation of the transaction." <u>Cervantes v. Countrywide Home Loans, Inc.</u>, 2009 U.S. Dist. LEXIS 87997, at ** 13-14 (D. Ariz. 2009) (holding that equitable tolling was not appropriate when plaintiffs simply alleged that defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure"). Given that plaintiff has failed to explain why she was prevented from discovering Option One's

7

1  alleged violations of TILA, her damages is claim is time-barred.

2          2.  <u>Rescission</u>

3          Option One contends that plaintiff's rescission claim

4  fails because she has not demonstrated an ability to tender

5  payment of the net proceeds she received from Option One.   "TILA

6  provides two private remedies: damages and rescission." <u>Shelley</u>

7  <u>v. Quality Loan Serv. Corp.</u>, 2009 U.S. Dist. LEXIS 58156, at *5

8  (C.D. Cal. June 17, 2009).  A borrower has the right to rescind

9  the loan transaction "until midnight of the third business day

10 following the consummation of the transaction or the delivery of

11 the information and rescission forms ... together with a

12 statement containing the material disclosures."  15 U.S.C. §

13 1635(a).  However, where the required forms and disclosures have

14 not been delivered to the obligor, 15 U.S.C. § 1635(f) provides

15 that "[a]n obligor's right of rescission shall expire three years

16 after the date of consummation of the transaction or upon the

17 sale of the property, whichever occurs first."

18          The Ninth Circuit has held that rescission under TILA

19 "*should* be conditioned on repayment of the amounts advanced by

20 the lender." <u>Yamamoto v. Bank of N.Y.</u>, 329 F. 3d 1167, 1170 (9th

21 Cir. 2003) (emphasis in original).  District courts in this

22 circuit have dismissed rescission claims under TILA at the

23 pleading stage based upon the plaintiff's failure to allege an

24 ability to tender loan proceeds.  <u>See, e.g.</u>, <u>Garza v. Am. Home</u>

25 <u>Mortgage</u>, 2009 U.S. Dist. LEXIS 7448, at *15 (E.D. Cal. Jan. 27,

26 2009) (stating that "rescission is an empty remedy without [the

27 borrower's] ability to pay back what she has received"); <u>Ibarra</u>

28 <u>v. Plaza Home Mortgage</u>, 2009 U.S. Dist. LEXIS 80581, at *22 (S.D.

1  Cal. Sept. 4, 1009); <u>Carnero v. Weaver</u>, 2009 U.S. Dist. LEXIS
2  62665, at *8 (N.D. Cal. July 20, 2009); <u>Pesayco v. World Sav.,</u>
3  <u>Inc.</u>, 2009 U.S. Dist. LEXIS 73299, at *4 (C.D. Cal. July 29,
4  2009); <u>Inq Bank v. Korn</u>, 2009 U.S. Dist. LEXIS 73329, at *7 (W.D.
5  Wash. May 22, 2009).  Plaintiff has not alleged any facts
6  indicating that she is able to tender sufficient funds to repay
7  the loan principal.  Without such facts, plaintiff cannot receive
8  the equitable remedy of rescission. Accordingly, the court will
9  grant Option One's motion to dismiss plaintiff's TILA cause of
10 action.

11       B.   <u>California Rosenthal Fair Debt Collection Practices Act</u>

12       Plaintiff's second cause of action alleges that AHMSI,
13 Option One, and Default Services violated the RFDCPA.  The RFDCPA
14 prohibits a host of unfair and oppressive methods of collecting
15 debt, but to be liable under the RFDCPA a defendant must fall
16 under its definition of "debt collector."  <u>Izenberg v. ETS Svcs.,</u>
17 <u>LLC</u>, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008).  A "debt
18 collector" under the RFDCPA is "any person who, in the ordinary
19 course of business, regularly, on behalf of himself or herself or
20 others, engages in debt collection."  Cal. Civ. Code § 1788.2(c)
21 (2008).

22       Plaintiff does not identify in her FAC the sections of
23 the RFDCPA that AHMSI, Default Services, and Option One allegedly
24 violated, and fail to allege facts that would support the
25 inference that any of these defendants are a "debt collector"
26 under the RFDCPA.  Instead, the FAC contains only a conclusory
27 restatement of the definition of "debt collector" under the
28 RFDCPA, (FAC ¶ 67.), and fails to allege other essential elements

of the statute necessary to establish liability as a "debt
collector," namely that the deed of trust memorializes a
"consumer credit transaction" and that the amount owed under the
deed of trust is a "consumer debt" according to the RFDCPA.  See
Cal. Civ. Code § 1788.2(b)-(f).  Such broad allegations, without
even identifying what part of the RFDCPA AHMSI, Default Services,
or Option One violated, are insufficient to survive a motion to
dismiss.  See Rosal v. First Fed. Bank of Cal., No. 09-1276, 2009
WL 2136777, at * 18 (N.D. Cal. July 15, 2009).

        Additionally, foreclosure pursuant to a deed of trust
does not constitute debt collection under the RFDCPA.  See
Izenberg, 589 F. Supp. 2d at 1199; see also Rosal, 2009 WL
2136777, at *18 (dismissing RFDCPA claim as to all defendants in
foreclosure case); Ricon v. Recontrust Co., No. 09-937, 2009 WL
2407396, at *4 (S.D. Cal. Aug. 4, 2009) (dismissing with
prejudice plaintiff's unfair debt collection claims in
foreclosure case); Pittman v. Barclays Capital Real Estate, Inc.,
No. 09-0241, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009)
(dismissing with prejudice plaintiff's Rosenthal Act claim in
foreclosure case because a "residential mortgage loan does not
qualify as a 'debt' under the statute"); Gallegos v. Recontrust
Co., No. 08-2245, 2009 WL 215406, at *3 (S.D. Cal. Jan. 28, 2009)
(dismissing RFDCPA claim in foreclosure case).  Since residential
mortgage loans to not fall within the RFDCPA, the court must
grant defendants' motion to dismiss plaintiff's cause of action
under the RFDCPA against AHMSI, Default Services, and Option One.

    C.   Negligence

        To prove a cause of action for negligence, plaintiff

10

must show "(1) a legal duty to use reasonable care; (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff injury." Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (2004). Plaintiff argues that AHMSI, Default Services, and Option One owed a duty to "perform acts in such a manner as to not cause [p]laintiffs harm." (FAC ¶ 75.) Plaintiff argues that this duty was breached when "[d]efendants . . . failed to maintain the original Mortgage Note, failed to properly create original documents, and failed to make the required disclosures to the [p]laintiffs." (Id.) Plaintiff further contends that AHMSI, Default Services, and Option One also breached their duties of care when they took payments to which they were not entitled, charged fees they were not entitled to charge, and made or authorized negative reports of plaintiff's creditworthiness to credit bureaus. (Id. ¶ 76.)

Plaintiff cites no authority for the proposition that AHMSI, Default Services, or Option One owed a duty to not cause plaintiff harm in their capacities as lender and loan servicer. Generally, "[a]bsent 'special circumstances' a loan transaction 'is at arms-length'" and no duties arise from the loan transaction outside of those in the agreement. Rangel v. DHI Mortgage Co., Ltd., No. CV F 09-1035 LJO GSA, 2009 WL 2190210, at *3 (E.D. Cal. July 21, 2009) (quoting Oaks Management Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (2006)). Absent

11

contrary authority, a pleading of an assumption of duty by AHMSI,
Default Services, or Option One, or a special relationship,
plaintiff cannot establish AHMSI, Default Services, or Option One
owed a duty of care.  See Hardy v. Indymac Federal Bank, ---
F.R.D. ---, No. CV F 09-935 LJO SMS, 2009 WL 2985446, at *7 (E.D.
Cal. Sept. 15, 2009); Bentham v. Aurora Loan Servs., No. C-09-
2059 SC, 2009 WL 2880232, at *2-3 (N.D. Cal. Sept. 1, 2009).

     Additionally, the FAC does not indicate which breaches
of this alleged duty apply to AHMSI, Default Services, or Option
One. (FAC ¶¶ 75-76.) Defendants should not be forced to guess how
their conduct was allegedly negligent.  See Associated Gen.
Contractors of Cal., Inc. v. Cal. State Council of Carpenters,
459 U.S. 519, 526 (1983); Gauvin v. Trombatore, 682 F. Supp.
1067, 1071 (N.D. Cal. 1988). The FAC groups together accusations
against all defendants, and is completely unclear as to how
AHMSI, Default Services, or Option One somehow breached a duty to
create loan documents and provide disclosures to plaintiff.  The
FAC fails to state that AHMSI, Default Services, or Option One
have breached a cognizable legal duty, and accordingly the court
will grant defendants' motion to dismiss plaintiff's cause of
action for negligence against AHMSI, Default Services, or Option
One.

     D.   Real Estate Settlement Procedures Act

          RESPA provides that borrowers must be provided certain
disclosures relating to the mortgage loan settlement process.
See 12 U.S.C. § 2601.  § 2605 of RESPA relates to the disclosures
and communications required regarding the servicing of mortgage
loans, and provides that loan servicers have a duty to respond to

1   QWRs from borrowers asking for information relating to the

2   servicing of their loan.  <u>See</u> 12 U.S.C. § 2605(e).  Under RESPA

3   lenders of federally related mortgage loans must disclose whether

4   servicing of a loan may be assigned, sold or transferred to loan

5   applicants.  12 U.S.C. § 2605(a).  Plaintiffs allege that Option

6   One failed to comply with these disclosure requirements.  (FAC ¶

7   82.)  Additionally, borrowers may send QWRs under RESPA to loan

8   servicers for information relating to the servicing of their

9   loan.  12 U.S.C. § 26055(e)(1).  Loan servicers have 60 days

10  after the receipt of a QWR to respond to the borrower inquiry.

11  12 U.S.C. § 2605(e)(2).  Plaintiff alleges that she mailed a QWR

12  to AHMSI on February 25, 2009, which included a demand to rescind

13  the loan under TILA, and that AHMSI has not responded to the

14  request as required by the statute.  (FAC ¶ 30.)

15       Plaintiff, however, fails to allege that AHMSI is a

16  servicer at all, or that it ever serviced plaintiff's loan.  In

17  fact, plaintiff alleges that she "is not certain at this time

18  exactly which of [d]efendants was actually the servicer of the

19  loan at any given time."  (<u>Id.</u> ¶ 81.)  Without alleging that

20  AHMSI is a "loan servicer" under RESPA plaintiffs cannot show

21  that AHMSI owed any duty to respond to their QWR, and accordingly

22  plaintiffs' RESPA claim against AHMSI must be dismissed.  <u>See</u>

23  <u>Izenberg v. ETS Services, LLC</u>, 589 F. Supp. 2d 1193, 1199-2000

24  (C.D. Cal. 2008) (dismissing plaintiffs' RESPA because it failed

25  to allege defendant was a loan servicer); <u>Lopez v. GMAC Mortg.</u>

26  <u>Corp.</u>, No. C 07-3911 CW, 2007 WL 3232448, at *3 (N.D. Cal. Nov.

27  1, 2007) (dismissing RESPA claim because plaintiff alleged

28  defendant was a trustee, not loan servicer).

1    Plaintiff's allegation that Option One "violated RESPA
2  at the time of closing on the sale of the Property by failing to
3  correctly and accurately comply with the disclosure requirements
4  provided therein" is also insufficient.  (FAC ¶ 82.)  This
5  allegation is utterly devoid of any facts that explain how Option
6  One failed to comply with the requirements of RESPA at the time
7  of closing.  Plaintiff's allegation is nothing more than a bare
8  legal conclusion against Option One, and therefore "stops short
9  of the line between possibility and plausibility" required by
10  Rule 12(b).  <u>Iqbal</u>, 129 S. Ct. at 1949.  Accordingly, the court
11  must grant AHMSI and Option One's motion to dismiss plaintiff's
12  RESPA claim.[4]

13    E.  <u>Breach of Fiduciary Duty</u>

14    The elements of a breach of fiduciary duty claim are
15  (1) existence of a fiduciary relationship; (2) breach of the
16  fiduciary duty; and (3) damage proximately caused by that breach.
17  <u>Roberts v. Lomanto</u>, 112 Cal. App. 4th 1553, 1562 (2003).  "The
18  absence of any one of these elements is fatal to the cause of
19  action."  <u>Pierce v. Lyman</u>, 1 Cal. App. 4th 1093, 1101 (1991).
20  Plaintiff alleges that Option One owed her a fiduciary duty
21  because it interfered with the fiduciary obligations of Butler
22  and Johnson by offering them incentives to breach their fiduciary
23  duties "by means of creating and participating in a scheme that
24  created an illusion to consumers that they are being informed of

25  _____

26    [4]    The court finds it unnecessary to decide whether
     plaintiff's RESPA claims are barred by the statute of
27  limitations, as plaintiff's RESPA claim is insufficient as
     pleaded and resolution of statute of limitations claims on a
28  motion to dismiss are generally disfavored as a matter of law.
     <u>See</u> <u>Supermail Cargo</u>, 68 F.3d at 1206.

1 all of the material facts, when in fact they are not." (FAC ¶
2 94.)

3          As previously mentioned, "[a]bsent special
4 circumstances, a loan transaction is at arms-length and there is
5 no fiduciary relationship between the borrower and lender."
6 Rangel v. DHI Mortgage Co., Ltd., 2009 U.S. Dist. LEXIS 65674, at
7 *8 (E.D. Cal. July 20, 2009); see also e.g. Tasaranta v.
8 Homecomings Fin., 2009 U.S. Dist. LEXIS 87372, at *15 (S.D. Cal.
9 Sept. 21, 2009); Brittain v. IndyMac Bank, FSB, 2009 U.S. Dist.
10 LEXIS 84863, at * 14 (N.D. Cal. Sept. 16, 2009); Dinsmore-Thomas
11 v. Ameriprise Fin., Inc., 2009 U.S. Dist. LEXIS 68882, at *29
12 (C.D. Cal. Aug. 3, 2009).  Plaintiff claims that although Option
13 One does not independently owe her a duty, it can be held
14 secondarily liable for the actions of her mortgage brokers
15 because an agency relationship existed between her brokers and
16 Option One.  See Plata v. Long Beach Mortg. Co., No. C 05-02746
17 JF, 2005 U.S. Dist. LEXIS 38807, at *23 (N.D. Cal. Dec. 13,
18 2005).  Even assuming that plaintiff can establish Option One is
19 secondarily liable for a breach of fiduciary claim as a matter of
20 law, plaintiff has not alleged sufficient facts to suggest an
21 agency relationship between Option One and plaintiff's mortgage
22 brokers outside of the conclusory allegation that "Option One
23 directly ordered, authorized, or participated in Defendants [sic]
24 . . . tortious conduct." (FAC ¶ 88.)  Without facts that would
25 suggest a plausible agency relationship between Option One and
26 her mortgage brokers plaintiff cannot override the presumption
27 that a lender owes no fiduciary duty to its borrowers.
28 Accordingly, the court must dismiss plaintiff's breach of

1  fiduciary duty claim.   See Iqbal, 129 S. Ct. at 1949.

2      F.   Fraud

3          In California, the essential elements of a claim for
4  fraud are "(a) a misrepresentation (false representation,
5  concealment, or nondisclosure); (b) knowledge of falsity (or
6  'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)
7  justifiable reliance; and (e) resulting damage."   In re Estate of
8  Young, 160 Cal. App. 4th 62, 79 (2008).   Under the heightened
9  pleading requirements for claims of fraud under Federal Rule of
10  Civil Procedure 9(b), "a party must state with particularity the
11  circumstances constituting the fraud."   Fed. R. Civ. P. 9(b).
12  The plaintiffs must include the "who, what, when, where, and how"
13  of the fraud.   Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106
14  (9th Cir. 2003) (citation omitted); Decker v. Glenfed, Inc., 42
15  F.3d 1541, 1548 (9th Cir. 1994).   Additionally, "[w]here multiple
16  defendants are asked to respond to allegations of fraud, the
17  complaint must inform each defendant of his alleged participation
18  in the fraud."   Ricon v. Reconstrust Co., No. 09-937, 2009 WL
19  2407396, at *3 (S.D. Cal. Aug. 4, 2009) (quoting DiVittorio v.
20  Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)).

21          Plaintiff's fraud allegations do not even come close to
22  surviving a motion to dismiss.   Plaintiff simply alleges that
23  "[d]efendants, and each of them, have made several
24  representations to [p]laintiff with regard to material facts" and
25  that these were false.   (FAC ¶¶ 98-100.)   Plaintiffs go on to
26  simply state the elements of a cause of action for fraud without
27  even once pointing to one specific representation made by any
28  defendant at any time.   (See Id. ¶¶ 101-103.)   Plaintiff's

conclusory statements do not identify with any specificity what,
if any, representations were made, when they were made, who made
them, or why they were false.  These sort of conclusory
statements come nowhere close to meeting the pleading standard
generally required under Rule 8, let alone the heightened
pleading standard of Rule 9(b).  See Iqbal, 129 S. Ct. at 1949;
Vess, 317 F.3d at 1006.  Accordingly, the court will grant
defendants' motion to dismiss plaintiff's fraud cause of action
against AHMSI, Default Services, and Option One.

G.   Breach of Contract

To state a claim for breach of contract under
California law, plaintiffs must allege (1) the existence of a
contract; (2) plaintiffs' performance or excuse for
nonperformance of the contract; (3) defendants' breach of the
contract; and (4) resulting damages.  Armstrong Petroleum Corp.
v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1390 (2004).
Plaintiff alleges that she entered into an agreement with "Option
One, Johnson, and Butler whereby [d]efendants promised to provide
[p]laintiff with an affordable loan."  (FAC ¶ 111.)  This
supposed promise to provide an "affordable loan" is vague, and do
not allege where such a promise is memorialized or what
consideration was given for such a promise.  Such a vague promise
is not sufficient to show the existence of a contract.  See
Beverage Distributors, Inc. v. Olympia Brewing Co., 440 F.2d 21,
30 (9th Cir. 1971).

Plaintiff goes on to state that defendants breached
their agreement when they failed to provide an affordable loan
and committed "wrongful acts, including but not limited to,

17

intentionally or negligently failing to obtain payment and
interest rates as promised, failing to submit an accurate loan
application, failing to supervise, failing to provide loan
documents for [p]laintiff review [sic] prior to closing, and
failing to explain the loan documents to [p]laintiff." (FAC ¶
113.) Plaintiff states no facts that indicate the existence of a
contract that obligated Option One to perform the aforementioned
actions they supposedly failed to do. <u>Iqbal</u>, 129 S. Ct. at 1949.
Without alleging facts that make the existence of a contract to
provide an affordable loan plausible, plaintiff cannot state a
claim for breach of contract. <u>See</u> <u>Hardy</u>, 2009 WL 2985446, at *5.
Accordingly, the court will grant Option One's motion to dismiss
plaintiff's claim for breach of contract.

      H.   <u>Implied Covenant of Good Faith and Fair Dealing</u>

      "Every contract imposes upon each party a duty of good
faith and fair dealing in its performance and its enforcement."
<u>Marsu, B.V. v. Walt Disney Co.</u>, 185 F.3d 932, 937 (9th Cir. 1999)
(quoting <u>Carma Developers, Inc. v. Marathon Dev. Cal., Inc.</u>, 2
Cal. 4th 342, 371 (1992)). "A typical formulation of the burden
imposed by the implied covenant of good faith and fair dealing is
'that neither party will do anything which will injure the right
of the other to receive the benefits of the agreement.'" <u>Andrews</u>
<u>v. Mobile Aire Estates</u>, 125 Cal. App. 4th 578, 589 (2005)
(quoting <u>Gruenberg v. Aetna Ins. Co.</u>, 9 Cal. 3d 566, 573 (1973)).
"The prerequisite for any action for breach of the implied
covenant of good faith and fair dealing is the existence of a
contractual relationship between the parties . . . ." <u>Smith v.</u>
<u>City & County of San Francisco</u>, 225 Cal. App. 3d 38, 49 (1990).

18

1    Plaintiff's cause of action for breach of contract
2 against Option One will be dismissed for failure to allege the
3 existence of a contract.  Plaintiff has also not alleged any
4 conduct by defendants that is inconsistent with the terms of the
5 Note or Deed of Trust between AHMSI or Default Services and
6 plaintiff that would plausibly suggest a breach of the covenant
7 of good faith and fair dealing.  As mentioned above, Option One,
8 AHMSI, and Default Services did not owe a fiduciary duty toward
9 plaintiff, and non-judicial foreclosure of the note was proper.
10 Plaintiff's breach of the covenant of good faith and fair dealing
11 claim is based on her other claims in the FAC, all of which have
12 been found to be inadequate.  Therefore, the court will grant
13 AHMSI, Default Services, and Option One's motion to dismiss
14 plaintiff's claim for breach of the covenant of good faith and
15 fair dealing.  <u>Id.</u>

16    I.   <u>Wrongful Foreclosure</u>

17    Plaintiff's FAC purports to state a claim for "wrongful
18 foreclosure" against AHMSI and Default Services.  Plaintiff has
19 failed to produce any common law rule or authority providing for
20 a claim for "wrongful foreclosure" at law.  <u>See</u> <u>Fortaleza v. PNC</u>
21 <u>Fin. Servs. Group, Inc.</u>, --- F.Supp.2d ---, No. C 09-2004 PJH,
22 2009 WL 2246212, at *11 (N.D. Cal. July 27, 2009).  Wrongful
23 foreclosure is an action in equity, where a plaintiff seeks to
24 set aside a foreclosure sale.  <u>See</u> <u>Abdallah v. United Sav. Bank</u>,
25 43 Cal. App. 4th 1101, 1009 (1996); <u>Karlsen v. American Sav. &</u>
26 <u>Loan Assn.</u>, 15 Cal. App. 3d 112, 117 (1971).

27    Plaintiff attempts to base this claim first on
28 California Commercial Code section 3301, alleging that AHMSI and

Default Services were not in possession of the Note, and are not
beneficiaries, assignees or employees of the entity in possession
of the note, and are therefore not "person[s] entitled to
enforce" the security interest on the property in accordance with
section 3301. (FAC ¶ 126.)  However, section 3301 reflects
California's adoption of the Uniform Commercial Code, and does
not govern non-judicial foreclosures, which is governed by
California Civil Code section 2924.  See Gaitan v. Mortgage Elec.
Registration Sys., No. EDCV 09-1009 VAP (MANx), 2009 WL 3244729,
at *10 (C.D. Cal. Oct. 5, 2009).  "The comprehensive statutory
framework established to govern nonjudicial foreclosure sales is
intended to be exhaustive." Moeller v. Lien, 25 Cal. App. 4th
822, 834 (1994).  Under California law, there is no requirement
for the production of the original note to initiate a non-
judicial foreclosure.  Oliver v. Countrywide Home Loans, Inc.,
No. CIV S-0-1381 FCD GGH, 2009 WL 3122573, at *3 (E.D. Cal. Sept.
29, 2009) (citing Alvara v. Aurora Loan Servs., No. C-0-1512 SC,
2009 WL 1689640, at *6 (N.D. Cal. Jun. 16, 2009)); Kamp v. Aurora
Loan Servs., No. SACV 09-00844-CJC(RNBx), 2009 WL 3177636, at *4,
(C.D. Cal. Oct. 1, 2009); Putkkuri v. Recontrust Co.,No. 08cv1919
WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009).
Therefore, plaintiff cannot assert a claim based on AHMSI or
Default Service's failure to comply with an inapplicable
commercial code when defendants are not required to "produce the
note" according to California law.

Plaintiff also bases her wrongful foreclosure action on
the basis of California Civil Code section 2923.5, arguing that
"[d]efendants failed to properly record and give proper notice of

the Notice of Default" on their property.  (FAC ¶ 128.)  The FAC

does not indicate whether AHMSI or Default Services failed to

properly give notice, and simply makes a general allegation as to

all defendants.  This general allegation gives AHMSI or Default

Services insufficient notice of whether they have committed any

conduct that violates section 2923.5, and AHMSI and Default

Services should not be forced to guess whether they are

individually liable for this conduct.  See Gauvin, 682 F. Supp.

at 1071.[5]

Plaintiff finally claims that defendants wrongfully

foreclosed on plaintiff's property because they received money

from the Troubled Asset Relief Program ("TARP") under the

Emergency Economic Stabilization Act ("EESA"), Pub. L. No. 110-

343, 122 Stat. 3765 (Oct. 3, 2008), and are therefore subject to

the Department of Treasury's guidelines for the Making Homes

Affordable Program, H.R. 142 Title I § 109-110, which requires

TARP recipients to suspend foreclosures and consider alternative

foreclosure prevention options.  (FAC ¶¶ 131-134.)  However,

plaintiff has not alleged that AHMSI or Default Services received

TARP funds, simply pleading that "some or all of the

---

[5]     Defendants claim that the statement in the Notice of
Default that the undersigned party "declares that the mortgagee,
beneficiary or the mortgagee's or beneficiary's authorized agent
has either contacted the borrower or tried with due dilligence to
contact the borrower as required by California Civil code [sic]
2923.5" proves that the foreclosure proceeding complied with
section 2923.5.  This statement within the Notice of Default
clearly does not establish that defendants necessarily complied
with section 2923.5.  It very well could be that defendants did
not give adequate notice to plaintiff despite the assurances in
the Notice of Default.  Since this statement in the Notice of
Default is not unquestionably true, the court does not find that
the Notice of Default defeats liability under section 2923.5.

1  [d]efendants" received such funds.  (Id. ¶ 132.)  This is

2  insufficient and forces AHMSI and Default Services to guess as to

3  their liability.  See Gauvin, 682 F. Supp. at 1071.  Accordingly,

4  plaintiff cannot state a claim upon which relief can be granted

5  and the court will grant AHMSI and Default Services' motion to

6  dismiss plaintiff's wrongful foreclosure cause of action.

7      J.   California's UCL

8          California's UCL, prohibits "any unlawful, unfair, or

9  fraudulent business act or practice."  Cal-Tech Commc'ns, Inc. v.

10  L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).  This cause

11  of action is generally derivative of some other illegal conduct

12  or fraud committed by a defendant, and "[a] plaintiff must state

13  with reasonable particularity the facts supporting the statutory

14  elements of the violation."  Khoury v. Maly's of Cal., Inc., 14

15  Cal. App. 4th 612, 619 (1993).

16          Plaintiff's claim under the UCL is vague and

17  conclusory, simply alleging that "[d]efendants' acts as alleged

18  herein constitute unlawful, unfair, and/or fraudulent business

19  practices. . . ."  (FAC ¶ 106.)  Plaintiff does not identify a

20  single specific practices of AHMSI, Default Services, or Option

21  One that she finds to be "unfair" or "deceptive" in their cause

22  of action.  The court has already indicated it will dismiss

23  plaintiff's other causes of action for failure to state a claim.

24  Since plaintiff has failed to state a claim on any of these

25  grounds, and because these grounds appear to be the sole basis

26  for plaintiff's UCL claim, they by necessity have failed to state

27  a claim against AHMSI, Default Services, or Option One under the

28  UCL.  Accordingly, the court will grant AHMSI, Default Services,

22

1  and Option One's motion to dismiss plaintiff's UCL cause of

2  action.

3          IT IS THEREFORE ORDERED that AHMSI, Default Services

4  and Option One's motion to dismiss plaintiff's claims against

5  AHMSI, Default Services, and Option One be, and the same hereby

6  is, GRANTED.

7          Plaintiff has twenty days from the date of this Order

8  to file an amended complaint, if she can do so consistent with

9  this Order.

10 DATED:  December 3, 2009

11

12                                                 _____

                    WILLIAM B. SHUBB

13                    UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  23